UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GERARDO MAYOL,

                    Plaintiff,

    - against -

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY
DEPARTMENT OF CORRECTION,
ROBERT ELLINGTON, RHONDA EASTMAN,
FIZGERALDA SANCHEZ, TODD FRIEDRICH,
JEREMIAH WINTER, JESSICA VARNEY,
JOHN DOE #1, JOHN DOE #2, and JOHN DOE #3.

                  Defendants.

------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 04 2010 ★

BROOKLYN OFFICE

**COMPLAINT**

**CV 10 - 2024**

**Civil Action No.** **BLOCK, J.**

**CARTER, M.J.**

Plaintiff, Gerardo Mayol, by and through his counsel, Tacopina & Arnold, LLP, alleges

the following facts and causes of action against the above-captioned Defendants:

## **PARTIES**

1.    Plaintiff Gerardo Mayol (also referred to as "Mr. Mayol" throughout this

Complaint) is a natural person who, at all times mentioned herein, resided in Queens County,

New York.

2.    At all times mentioned herein, Defendant City of New York was a municipal

agency organized and existing under and by virtue of the laws of the State of New York.

3.    At all times mentioned herein, Defendant New York City Police Department

("NYPD") was a municipal agency organized and existing under and by virtue of the laws of the

State of New York.

4.      At all times mentioned herein, Defendant New York City Department of Correction ("DOC") was a municipal agency organized and existing under and by virtue of the laws of the State of New York.

6.      At all times mentioned herein, Defendant Robert Ellington ("Ellington") was an employee of the NYPD and City of New York. Specifically, upon information and belief, the NYPD employed Robert Ellington as a Sergeant within its 104th Precinct. At all times mentioned herein, Ellington was acting within the course and scope of his employment.

7.      At all times mentioned herein, Defendant Rhonda Eastman ("Eastman") was an employee of the NYPD and City of New York. Specifically, upon information and belief, the NYPD employed Eastman as a Police Officer within its 104th Precinct. At all times mentioned herein, Eastman was acting within the course and scope of her employment.

8.      At all times mentioned herein, Defendant Fizgeralda Sanchez ("Sanchez") was an employee of the NYPD and City of New York. Specifically, upon information and belief, the NYPD employed Sanchez as a Police Officer within its 104th Precinct. At all times mentioned herein, Sanchez was acting within the course and scope of her employment.

9.      At all times mentioned herein, Defendant Todd Friedrich ("Friedrich") was an employee of the NYPD and City of New York. Specifically, upon information and belief, the NYPD employed Friedrich as a Police Officer within its 104th Precinct. At all times mentioned herein, Friedrich was acting within the course and scope of his employment.

10.      At all times mentioned herein, Defendant Jeremiah Winter ("Winter") was an employee of the NYPD and City of New York. Specifically, upon information and belief, the NYPD employed Winter as a Police Officer within its 104th Precinct. At all times mentioned herein, Winter was acting within the course and scope of his employment.

2

11.    Defendant Jessica Varney ("Varney") is a natural person who, at all times mentioned herein, resided in Queens County, New York.

12.    At all times mentioned herein, Defendant John Doe #1 ("John Doe #1") was an employee of the NYPD and City of New York.  Specifically, upon information and belief, the NYPD employed John Doe #1 as a Lieutenant within its 104th Precinct.  At all times mentioned herein, John Doe #1 was acting within the course and scope of his employment.

13.    At all times mentioned herein, Defendant John Doe #2 ("John Doe #2") was an employee of the DOC and City of New York.  Specifically, upon information and belief, the DOC employed John Doe #2 as a Corrections Officer assigned to work in Queens County Central Booking.  At all times mentioned herein, John Doe #2 was acting within the course and scope of his employment.

14.    At all times mentioned herein, Defendant John Doe #3 ("John Doe #3") was an employee of the DOC and City of New York.  Specifically, upon information and belief, the DOC employed John Doe #3 as a Corrections Officer assigned to work Queens County Central Booking in Queens County.  At all times mentioned herein, John Doe #3 was acting within the course and scope of his employment.

## JURISDICTION

15.    This case involves a federal question.

16.    As a result, this Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331, 1343 (3) and (4), and 1367, as well as 42 U.S.C. §§1983 and 1985.

17.    This Court then has supplemental jurisdiction over Plaintiff's pendent state law claims also.

3

18.    This Court is the proper venue for this action because the Plaintiff resides in this District.

## PRELIMINARY MATTERS

19.    On May 1, 2009, a Notice of Claim was served on behalf of Gerardo Mayol by personal service upon the City of New York, NYPD, and DOC.  Annexed hereto as Exhibit A is a copy of that Notice of Claim.

20.    On October 29, 2009, Mr. Mayol was examined about his instant claims at a hearing conducted pursuant to section 50h of the Municipal Law of the State of New York.

21.    The City of New York, NYPD, and DOC have failed to adjust or pay Mr. Mayol's claim.

## FACTS

22.    In January 2009, Mr. Mayol was living in Apartment 2R of a building located at 1874 Harman Street, Ridgewood, New York 11385.

23.    His neighbor at the time was Defendant Jessica Varney, whom the landlady of the building, Nancy Maradiaga, was seeking to evict due to her disruptive and unseemly conduct as a tenant.

24.    On or about January 7, 2009, Mr. Mayol appeared in landlord/tenant court in Queens, New York, at Ms. Maradiaga's request, to testify in the eviction proceedings against Varney.

25.    Before the hearing began, Varney approached Mr. Mayol and threatened to retaliate against him for agreeing to provide testimony in the eviction case.

26.    A few days later, Varney acted on her threat by filing a false complaint with the 104th Precinct of the NYPD against Mr. Mayol for stalking and harassment.

27.    Upon information and belief, the detective initially assigned to the case determined that Varney's complaint had no merit after conducting an investigation of it.

28.    In the meantime, Lieutenant John Doe #1 and Sergeant Robert Ellington, both of the 104th Precinct in Queens, New York, were involved in a furtive relationship with Varney.

29.    Around 9:00 p.m. on or about February 4, 2009, upon Varney's request, John Doe #1 and Ellington caused Mr. Mayol to be falsely arrested by Police Officer Rhonda Eastman and her partner, Police Officer Fizgeralda Sanchez, also of the 104th Precinct, on a charge of stalking. Specifically, John Doe #1 and Ellington simply ordered Sanchez and Eastman to arrest Mr. Mayol as a favor to Varney. Neither John Doe #1, Ellington, Sanchez, nor Eastman consulted with the detective assigned to the case before Mr. Mayol's arrest. They also did not investigate the case or cause an investigation to be conducted before his arrest for the sake of determining the truth of Varney's allegations. In fact, when Sanchez and Eastman arrived at Mr. Mayol's home, they were not even sure as to the alleged criminal activity for which they were arresting him.

30.    Once Mr. Mayol was in police custody at the 104th Precinct, Ellington and Police Officer Todd Friedrich verbally abused Mr. Mayol by taunting and berating him. For example, Ellington yelled at him, "You fuckin' bastard. You're gonna have to learn how to respect." When Mr. Mayol was put inside a holding cell at the precinct, he begged Friedrich for permission to use the restroom because he did not feel well and was going to urinate on himself. In response, Friedrich told Mr. Mayol that if he urinated on the floor, he was going to use Mr. Mayol's sweater to clean it up and then put his sweater back on him."

5

31.     As a reasonably foreseeable consequence of this false arrest and the police's merciless tactics, Mr. Mayol experienced dizziness, shortness of breath, and respiratory and cardiac distress.

32.     Mr. Mayol repeatedly informed Ellington, Friedrich, and Police Officer Jeremiah Winter of his symptoms of distress and begged them for medical assistance, including, but not limited to, being taken to the hospital immediately.

33.     Ellington, Friedrich, and Winter refused Mr. Mayol's pleas for any assistance and continued to harass him. For example, when Mr. Mayol told Ellington that he was feeling very ill, Ellington replied, "Shut the fuck up. I'll put my fuckin' foot up your ass." When Mr. Mayol asked Winter let him go to the hospital, Winter told him, "You're never gonna come out if you go to the hospital." John Doe #1 witnessed this behavior yet he refused to intervene and instead let Mr. Mayol continue to suffer.

34.     A few hours later, when Mr. Mayol was still in police custody, his condition worsened, as he could barely stand, was visibly and audibly choking, and experienced numbness in some of his extremities. He pleaded with Friedrich and Winter again for them to help provide him medical assistance, but they again refused his requests. Again, John Doe #1 witnessed this behavior and still did not intervene thereby allowing Mr. Mayol's suffering to continue.

35.     Instead of facilitating his medical treatment, Friedrich and Winter transported Mr. Mayol to Central Booking. Mr. Mayol's condition had worsened to such a degree at that point that he did not have the strength to stand. Nonetheless, Friedrich and Winter transported him to Central Booking by pulling him up on to his feet and dragging him from their police vehicle to the holding areas in Central Booking.

36.    In Central Booking, Friedrich, Winter, John Doe #2, and John Doe #3 had a duty to monitor Mr. Mayol, ensure his safety, and facilitate the treatment of his medical problems.

37.    Once Mr. Mayol was placed in a holding cell in Central Booking, Mr. Mayol fell to the floor because he no longer had the strength to stand and began vomiting.

38.    Upon information and belief, other arrestees in the same holding cell were yelling to John Doe #2, John Doe #3, Friedrich, and Winter that Mr. Mayol appeared to be at risk of dying and needed medical attention immediately, but these authorities breached their duty to Mr. Mayol by failing and refusing to give Mr. Mayol any help or call for medical assistance.

39.    Mr. Mayol then lost consciousness, passing out on the floor of his cell.

40.    He awoke at Queens General Hospital where the doctors determined that he had suffered a stroke in NYPD and DOC custody. He was then transferred to Elmhurst Hospital where he remained for approximately 20 days due to the severity of his injuries.

41.    The above-referenced actions and inactions of Varney, the City of New York, NYPD, and DOC, as well as their agents, servants, and/or employees, including, but not limited to, their false arrest and subsequent overwhelming, outrageous, and cruel conduct in failing to help provide Mr. Mayol the appropriate medical treatment, were the proximate cause of his stroke.

42.    To make matters worse, Ellington came to Mr. Mayol's apartment within days after Mr. Mayol was released from the hospital.

43.    When he arrived, Ellington continued to terrorize Mr. Mayol by banging on his door and threatening to arrest him again for no legitimate reason.

44.    Mr. Mayol, stricken with fear, was forced to hide in his apartment until Ellington went away.

7

45.     As a direct result of his stroke and the other mental and emotional torture he endured at the hands of the City of New York, NYPD and DOC, as well as their agents, servants, and/or employees, Mr. Mayol's persisting injuries include, but are not limited to: impaired speech and vision, diminished motor skills, poor equilibrium, and psychological and emotional distress. Because of these injuries, Mr. Mayol has, and will continue to, incur the cost of medical treatment at the hospital, in physical therapy, and with his treating doctors and psychologist.

46.     The Queens County District Attorney's Office did charge Mr. Mayol by way of a Criminal Complaint, dated February 5, 2009, with one count of Stalking in the Fourth Degree under P.L. §120.45(1) based upon this false arrest. On February 9, 2009, Varney signed an affidavit, under oath, corroborating this Complaint while she knew the allegations against Mr. Mayol were false. As a proximate result of Mr. Mayol's false arrest and malicious prosecution, Mr. Mayol was wrongfully forced to endure the physical, emotional, and psychological distress of defending himself in that case and being accused of a crime he did not commit. This distress only exacerbated his already substantial injuries set forth above. On October 6, 2009, the Queens Country Criminal Court dismissed that case in its entirety based upon the prosecution's oral motion which cited to the lack of merit in Varney's allegations.

47.     The City of New York, NYPD, and DOC have had a number of customs and practices which caused and/or contributed to this false arrest and imprisonment, malicious prosecution, deliberate indifference to his medical needs, battery, intentional infliction of emotional distress, and negligence.

48.     First, agents, servants, and/or employees of the City of New York and NYPD routinely fail to conduct a reasonable investigation before making an arrest and/or causing a criminal prosecution to be commenced against an arrestee. In accordance with that custom and

practice, Defendants City of New York and NYPD, as well as their agents, servants and/or employees, including, but not limited to, John Doe #1, Ellington, Sanchez, and Eastman, failed to investigate Varney's credibility, interview any third party witnesses, and even refused to give Mr. Mayol an opportunity to explain himself before causing him to be arrest and criminally prosecuted.

49.    Second, agents, servants, and/or employees of the City of New York and the NYPD routinely arrest suspects and cause them to be prosecuted without probable cause. In accordance with that custom and practice, Defendants City of New York and NYPD, as well as their agents, servants and/or employees, including, but not limited to, John Doe #1, Ellington, Sanchez, and Eastman, arrested Mr. Mayol and caused him to be prosecuted without probable cause.

50.    Third, the City of New York and NYPD have failed to train its agents, servants, and/or employees to properly understand the meaning of probable cause. This failure has been, and continues to be, a proximate cause of Defendants City of New York and NYPD, as well as their agents, servants and/or employees, routinely relying upon the word of one person to support probable cause for an arrest and a criminal prosecution without investigating the truth of that person's allegations or speaking to other witnesses. Such was the case here as Defendants City of New York and NYPD, as well as their agents, servants and/or employees, including, but not limited to, John Doe #1, Ellington, Sanchez, and Eastman, relied solely upon the word of Varney to support probable cause for Mr. Mayol's arrest and criminal prosecution without investigating the truth of Varney's allegations or speaking to other witnesses.

51.    Fourth, the City of New York, NYPD, and DOC have failed to scrutinize the moral character of its agents, servants, and employees in a reasonable manner when they are

9

hired and throughout the course of their employment. As a result, the City of New York, NYPD, and DOC not only employ individuals like Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3, but also promote individuals like John Doe #1 and Ellington, all of whom showed themselves to be morally unfit to hold such important and powerful positions in our society.

52.    Fifth, the City of New York and NYPD have maintained a deficient standard of supervising their high level agents, servants, and/or employees. This standard allowed for John Doe #1 and Ellington to act with enough autonomy in this case to pursue their own illicit relationships with Varney during work hours and then execute their illegal plan to arrest Mr. Mayol and caused him to be criminally prosecuted without probable cause.

53.    Sixth, the City of New York, NYPD, and DOC maintain deficient standards of training their agents, servants, and/or employees in terms of handling arrestees' medical problems. Specifically, members of the NYPD and DOC receive very little training on how to properly recognize the symptoms and appreciate the seriousness of a stroke and as well as other serious medical problems. Additionally, the NYPD and DOC do not provide continuing or periodic training or education for their agents, servants, and/or employees regarding these medical issues. The NYPD and DOC also do not perform continuous or periodic tests of their agents, servants, and/or employees on these medical issues, thereby failing to ensure that their agents, servants, and/or employees are reasonably competent in these areas. Those deficit policies caused John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 to lack such a reasonable competence in these areas. As a result, those deficit policies helped cause the deliberate indifference of John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 to Mr. Mayol's serious medical problems.

54.     Seventh, the City of New York, NYPD, and DOC, as well as their agents, servants, and/or employees, have maintained a deficient custom and practice of providing reasonable medical care for arrestees and other individuals within their custody.  For example, many members of the NYPD and DOC ignore or fail to give due regard and attention to the health problems of arrestees because they are more concerned with processing the arrest and transporting the arrestee to court.  This custom and practice caused and/or contributed to agents, servants, and/or employees of the City of New York, NYPD, and DOC, including, but not limited to, John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3, to show deliberate indifference to Mr. Mayol's serious medical problems.

### AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF MR. MAYOL'S CIVIL RIGHTS
### (False Arrest and Imprisonment against Defendants City of New York, NYPD, John Doe #1, Ellington, Sanchez, Eastman and Varney )

55.     Plaintiff repeats and reiterates the allegations in paragraphs 1 though 54 of this Complaint.

56.     Defendants John Doe #1, Ellington, Sanchez, and Eastman lacked probable cause to arrest and imprison the Plaintiff.

57.     As set forth above, Defendant Varney proximately caused this false arrest because she knowingly filed a false complaint against the Plaintiff with the NYPD.

58.     This wrongful conduct was done in violation of Plaintiff's constitutional rights.

59.     This wrongful conduct was done within the course and scope of these individual Defendants' employment.

60.     As set forth above in paragraphs 47 through 52 above, City of New York and NYPD have maintained a number of customs and practices which caused and/or contributed to this false arrest and imprisonment.

11

61.    As set forth above, such conduct was performed under the color of state law.

62.    As a result of their conduct, Defendants City of New York, NYPD, John Doe #1, Ellington, Sanchez, and Eastman violated Plaintiff's civil rights and are liable pursuant to 42 U.S.C. §1983.

63.    These violations were the proximate cause of Plaintiff's physical and mental injuries and medical costs set forth above.

64.    As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

65.    In light of the egregious nature of these individual Defendants' wrongful conduct and these municipal Defendants' deficient policies and customs which contributed to that conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

66.    Plaintiff will also be seeking attorneys' fees based upon this cause of action.

**AS AND FOR A SECOND CAUSE OF ACTION
VIOLATION OF MR. MAYOL'S CIVIL RIGHTS
(Malicious Prosecution Against Defendants City of New York,
NYPD, John Doe #1, Ellington, Sanchez, Eastman, and Varney)**

67.    Plaintiff repeats and reiterates the allegations in paragraphs 1 though 54 of this Complaint.

68.    As set forth above, Defendants City of New York and NYPD, as well as their agents, servants and/or employees, including, but not limited to, John Doe #1, Ellington, Sanchez, and Eastman, caused a criminal prosecution to be commenced against the Plaintiff under the color of state law

69.    As set forth above, that prosecution ended in the Plaintiff's favor as the matter against him was dismissed and sealed upon the motion of the Queens County District Attorney's Office.

70.     As set forth above, that prosecution of the Plaintiff was without probable cause and with malice.

71.     As set forth above, Defendant Varney proximately caused this illegal and malicious prosecution because she knowingly filed a false complaint against the Plaintiff with the NYPD and then continued to endorse and verify the supposed truth that false complaint with Queens County District Attorney's Office.

72.     As set forth above, Defendants City of New York, NYPD, John Doe #1, Ellington, Sanchez, and Eastman, as well as their agents, servants and/or employees, when they knew or should have known that Plaintiff had not committed any crime.

73.     This wrongful conduct was within the course and scope of John Doe #1's, Ellington's, Sanchez's, and Eastman's employment.

74.     As set forth above, this wrongful conduct the proximate result of the customs and practices of the Defendants City of New York and NYPD described in paragraphs 47-52 above.

75.     As set forth above, this criminal prosecution against the Plaintiff was the proximate cause of him being deprived of his rights to freedom and liberty under the Fourth Amendment.

76.     As a proximate result of the conduct set forth herein, Defendants City of New York and NYPD, as well as their agents, servants and/or employees, including, but not limited to, John Doe #1, Ellington, Sanchez, and Eastman, violated the Plaintiff's civil rights and are liable pursuant to 42 U.S.C. §1983.

77.     These violations were the proximate cause of Plaintiff's physical and mental injuries and medical costs set forth above.

13

78.     As a result of these injuries, Plaintiff has been damaged in the sum of

$30,000,000.

80.     In light of the egregious nature of these individual Defendants' wrongful conduct

and these municipal Defendants' deficient policies and customs which contributed to that

conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

81.     Plaintiff will also be seeking attorneys' fees based upon this cause of action.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF MR. MAYOL'S CIVIL RIGHTS**
**(Failure to Facilitate Medical Treatment**
**against All Defendants Except Varney)**

82.     Plaintiff repeats and reiterates the allegations in paragraphs 1 though 54 of this

Complaint.

83.     Defendants City of New York, NYPD, DOC, John Doe #1, Ellington, Sanchez,

Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 owed Plaintiff a duty to make

reasonable efforts to ensure that he received the appropriate medical treatment while in their

custody.

84.     As set forth above, these individual Defendants knew or should have known that

Mr. Mayol was in serious physical distress while in their custody.

85.     Yet, these individual Defendants showed deliberate indifference to Plaintiff's

serious medical needs.

86.     This wrongful conduct was done within the course and scope of their

employment.

87.     This wrongful conduct was also done in violation of Plaintiff's constitutional

rights.

88.    As set forth above in paragraphs 47, 51, 53, and 54 above, City of New York, NYPD and DOC have maintained a number of customs and practices which caused and/or contributed to this wrongful conduct.

89.    As set forth above, such conduct was performed under the color of state law.

90.    As a result of their wrongful conduct, Defendants City of New York, NYPD, DOC, John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 violated Plaintiff's civil rights and are liable pursuant to 42 U.S.C. §1983.

91.    These violations were the proximate cause of Plaintiff's physical and mental injuries and medical costs set forth above.

92.    As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

93.    In light of the egregious nature of these individual Defendants' wrongful conduct and these municipal Defendants' deficient policies and customs which contributed to that conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

94.    Plaintiff will also be seeking attorneys' fees based upon this cause of action.

### AS AND FOR FOURTH CAUSE OF ACTION
### FALSE ARREST AND IMPRISONMENT
### (Pendent State Law Claim against All Defendants)

95.    Plaintiff repeats and reiterates the allegations in paragraphs 1 though 54 of this Complaint.

96.    Defendants John Doe #1, Ellington, Sanchez, Eastman, and Varney caused Plaintiff to be arrested and imprisoned without probable cause.

97.    These Defendants then caused Plaintiff to be illegally detained against his will.

98.    Plaintiff was conscious of the arrest and confinement.

15

99.    Plaintiff did not consent to the arrest or confinement.

100.    Plaintiff's arrest and confinement were not otherwise privileged.

101.    Plaintiff's arrest and confinement were not supported by probable cause.

102.    Plaintiff's illegal arrest and confinement were the proximate cause of Plaintiff's physical and mental injuries and medical costs set forth above.

103.    As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

104.    This wrongful conduct was also done within the course and scope of these individual Defendants' employment, so the City of New York and NYPD are vicariously liable for that conduct.

105.    In light of the egregious nature of these individual Defendants' wrongful conduct and these municipal Defendants' deficient policies and customs which contributed to that conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

106.    Plaintiff will also be seeking attorneys' fees based upon this cause of action.

### AS AND FOR A FIFTH CAUSE OF ACTION
### MALICIOUS PROSECUTION
**(Pendant State Law Claim Against Defendants
City of New York, NYPD, John Doe #1, Ellington,
Sanchez, Eastman, and Varney)**

107.    Plaintiff repeats and reiterates the allegations in paragraphs 1 though 54 of this Complaint.

108.    As set forth above, Defendants City of New York and NYPD, as well as their agents, servants and/or employees, including, but not limited to, John Doe #1, Ellington, Sanchez, and Eastman, caused a criminal prosecution to be commenced against the Plaintiff under the color of state law

16

109.   As set forth above, that prosecution ended in Plaintiff's favor as the matter against him was dismissed and sealed upon the motion of the Queens County District Attorney's Office.

110.   As set forth above, that prosecution of the Plaintiff was without probable cause and with malice.

111.   As set forth above, Defendant Varney proximately caused this illegal prosecution because she knowingly filed a false complaint against the Plaintiff with the NYPD and then knowingly continued to endorse and verify that false complaint with Queens County District Attorney's Office.

112.   As set forth above, Defendants City of New York, NYPD, John Doe #1, Ellington, Sanchez, and Eastman, as well as their agents, servants and/or employees, when they knew or should have known that Plaintiff had not committed any crime.

113.   This wrongful conduct was within the course and scope of John Doe #1's, Ellington's, Sanchez's, and Eastman's employment, so the City of New York and NYPD are vicariously liable for this malicious prosecution of the Plaintiff.

114.   As set forth above, this wrongful conduct the proximate result of the customs and practices of the Defendants City of New York and NYPD described in paragraphs 47-52 above.

115.   This wrongful conduct was was the proximate cause of Plaintiff's physical and mental injuries and medical costs set forth above.

116.   As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

117.   In light of the egregious nature of these individual Defendants' wrongful conduct and these municipal Defendants' deficient policies and customs which contributed to that conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

17

118.   Plaintiff will also be seeking attorneys' fees based upon this cause of action.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BATTERY
### (Pendent State Law Claim against Defendants Sanchez,
### Eastman, Winter, and Friedrich)

119.   Plaintiff repeats and reiterates the allegations in paragraphs 1 though 54 of this Complaint.

120.   As described above, Defendants Sanchez, Eastman, Winter, and Friedrich intentionally touched Plaintiff.

121.   Plaintiff did not consent to these intentional contacts.

122.   This contact was objectively offensive and subjectively offensive to Plaintiff.

123.   These wrongful contacts were the proximate cause of Plaintiff's physical and mental injuries and medical costs set forth above.

124.   As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

125.   In light of the egregious nature of these individual Defendants' wrongful conduct and these municipal Defendants' deficient policies and customs which contributed to that conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

126.   Plaintiff will also be seeking attorneys' fees based upon this cause of action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Pendent State Law Claim against All Defendants)

127.   Plaintiff repeats and reiterates the allegations in paragraphs 1 through 54 of this Complaint.

128.    The wrongful actions of Defendants John Doe #1, Ellington, Sanchez, Eastman, and Varney in having Plaintiff falsely arrested and imprisoned, as set described above, were extreme and outrageous.

129.    Through these actions, these Defendants intentionally caused Plaintiff severe emotional distress as described above.

130.    These wrongful actions were the proximate cause of Plaintiff's severe emotional distress.

131.    Defendants John Doe #1, Ellington, Sanchez, and Eastman performed these wrongful acts within the scope of their employment.

132.    Consequently, Defendants City of New York and NYPD are vicariously liable for these wrongful acts.

133.    The wrongful actions of John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 in showing deliberate indifference to Plaintiff's serious medical problems, as set forth above, were also extreme and outrageous.

134.    Through these actions, these Defendants intentionally caused Plaintiff severe emotional distress as described above.

135.    These wrongful actions were the proximate cause of Plaintiff's severe emotional distress.

136.    Defendants John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 performed these wrongful actions within the scope of their employment.

137.    Consequently, Defendants City of New York, NYPD, and DOC are vicariously liable for these wrongful acts.

138.    As a result of the Plaintiff's severe emotional distress from these wrongful actions, he has been damaged in the sum of $30,000,000.

139.    In light of the egregious nature of these individual Defendants' wrongful conduct and these municipal Defendants' deficient policies and customs which contributed to that conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

140.    Plaintiff will also be seeking attorneys' fees based upon this cause of action.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## NEGLIGENCE
### (Pendent State Law Claim against
### All Defendants Except Varney)

141.    Plaintiff repeats and reiterates the allegations in paragraphs 1 through 54 of this Complaint.

142.    Defendants John Doe #1, Ellington, Sanchez, Eastman, Winter, Friedrich, John Doe #2, and John Doe #3 owed Plaintiff a duty to make reasonable efforts to ensure that he received the appropriate medical treatment in a timely manner while in their custody.

143.    As set forth above, these Defendants either were, or at least should have been, aware that Plaintiff was in serious physical distress while in their custody.

144.    Based upon his symptoms detailed above, it was reasonably foreseeable that Plaintiff would suffer a stroke.

145.    These Defendants' breached their duty to Plaintiff by failing to make reasonable efforts to ensure that he received the appropriate medical treatment in a timely manner.

146.    These failures were the proximate cause of Plaintiff's physical and mental injuries set forth above.

147.    As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

148.    This wrongful conduct was also done within the scope of these individual

Defendants' employment, so the City of New York, NYPD, and DOC are vicariously liable for

that conduct.

149.    In light of the egregious nature of these individual Defendants' wrongful conduct

and the municipal Defendants' deficient policies and customs which contributed to that conduct,

Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

150.    Plaintiff will also be seeking attorneys' fees based upon this cause of action.

**AS AND FOR A NINTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Pendent State Law Claim against Defendants**
**City of New York, NYPD, and DOC)**

151.    Plaintiff repeats and reiterates the allegations in paragraphs 1 through 54 of this

Complaint.

152.    Defendants City of New York, NYPD, and DOC had a duty to hire, train, retain,

and supervise employees of reasonable competence and moral character to protect members of

the public from injury.

153.    Defendants City of New York, NYPD, and DOC breached those duties in the

many ways.

154.    First, these Defendants have failed to scrutinize the moral character of its agents,

servants, and employees, including, but not limited to, John Doe #1, Ellington, Sanchez,

Eastman, Winter, Friedrich, John Doe #2, and John Doe #3, in a reasonable manner when they

are hired and throughout the course of their employment.

155.    Second, the City of New York and the NYPD have allowed a custom and practice

to exist where its servants, employees, and agents routinely fail to conduct a reasonable

investigation before making an arrest.

156.    Third, the City of New York and the NYPD have allowed a custom and practice to exist where its servants, employees, and agents routinely arrest suspects without probable cause.

157.    Fourth, the City of New York and NYPD have failed to train its agents, servants, and/or employees to properly understand the meaning of probable cause.

158.    Fifth, the City of New York and NYPD have maintained a deficient custom and practice of supervising their high level agents, servants, and/or employees.

159.    Sixth, due to their deficient standard detailed in paragraph 53 of this Complaint, the agents, servants, and/or employees of the City of New York, NYPD, and DOC are not reasonably responsive to arrestees' medical complaints.

160.    Seventh, the City of New York, NYPD, and DOC, as well as their agents, servants, and/or employees, have maintained a deficient custom and practice, as detailed in paragraph 54 of this Complaint, of providing reasonable medical care for arrestees and other individuals within their custody.

161.    These breaches caused and/or contributed to Plaintiff's physical and emotional injuries and medical costs set forth above.

162.    As a result of these injuries, Plaintiff has been damaged in the sum of $30,000,000.

163.    In light of the egregious nature of these Defendants' wrongful conduct, Plaintiff also seeks punitive damages for this cause of action in the sum of $30,000,000.

164.    Plaintiff will also be seeking attorneys' fees based upon this cause of action.

## **JURY DEMAND**

165.    Plaintiff demands a trial by jury.

22

## CONCLUSION

**WHEREFORE**, Plaintiff Gerardo Mayol, demands judgment against the above-

captioned Defendants in the sum of $540,000,000, together with the costs and disbursements of

this action, including attorneys' fees.

Dated: New York, New York
     April 30, 2010

                                        *Joseph Tacopina*

                               Joseph Tacopina, Esq. (JT-2261)
                               Tacopina & Arnold, LLP
                               275 Madison Avenue, 35th FL
                               New York, NY 10016
                               (212) 883-8833

In the Matter of the Claim of

**Gerardo Mayol**

-against-

**City of New York, New York City Police Department, New York City Department of Correction, Lieutenant John Doe, Sergeant Robert Ellington, Police Officer Rhonda Eastman, Police Offer Fizgeralda Sanchez, Police Officer Todd Friedrich, Police Officer Jeremiah Winter, and Jessica Varney**

TO: Comptroller of the City of New York, Municipal Building, 1 Centre Street, New York, NY

   And

Corporation Counsel, 100 Church Street, New York, New York 10007

   **PLEASE TAKE NOTICE** that the undersigned claimant(s) hereby make(s) claim and demand against you as follows:

1.      **The name and post-office address of each Claimant and Claimant's attorney is:**

**Claimant**
Gerardo Mayol
1874 Harman Street, Apt. 2R
Ridgewood, New York 11385

**Claimant's Attorney**
Joseph Tacopina, Esq.
Tacopina, Seigel & Turano, P.C.
275 Madison Avenue, 35th Floor
New York, New York 10016

2.      **The nature of the claim:**

   Members of the New York City Police Department are responsible for committing the following torts against Claimant Gerardo Mayol on or about February 4th and 5th of 2009: Assault; Battery; False Arrest; False imprisonment; Malicious prosecution; Failure to provide medical treatment; Negligent hiring, training, supervision and retention of employees; Intentional and negligent infliction of emotional distress; and a Violation of claimant's civil and constitutional rights.

3.    **The time when, the place where and the manner in which the claim arose:**

In January 2009, the Claimant was living in Apartment 2R of a building located at 1874 Harman Street, Ridgewood, New York 11385. His neighbor at the time was Jessica Varney, whom the landlady of the building, Nancy Maradiaga, was seeking to evict due to her disruptive and unseemly conduct as a tenant. On or about January 7, 2009, the Claimant appeared in landlord/tenant court in Queens, New York, at Ms. Maradiaga's request, to testify in the eviction proceedings against Ms. Varney. Before the hearing began, Ms. Varney approached the Claimant and threatened to retaliate against him for agreeing to provide testimony in the eviction case.

A few days later, Ms. Varney acted on her threat by filing a false complaint with the 104th Precinct against the Claimant for stalking. Upon information and belief, Detective Jason Houlihan was assigned to the case and determined that Ms. Varney's complaint had no merit after he conducted an investigation of it. In the meantime, a Lieutenant John Doe (name currently unknown) and Sergeant Robert Ellington, both of the 104th Precinct in Queens, New York, were involved in a furtive relationship with Ms. Varney. Around 9:00 p.m. on or about February 4, 2009, upon Ms. Varney's request, Lt. Doe and Sgt. Ellington had the Claimant falsely arrested by Police Officer Rhonda Eastman and her partner, Police Officer Fizgeralda Sanchez, also of the 104th Precinct. Once the Claimant was in police custody, Sgt. Ellington, Police Officer Todd Friedrich, and other members of the 104th Precinct verbally attacked the Claimant by taunting and berating him while he was in a holding cell. As a consequence of the false arrest and the police's merciless tactics, the Claimant experienced dizziness, shortness of breath, and respiratory and cardiac distress. The Claimant repeatedly informed Sgt. Ellington, Officer Friedrich, Police Officer Jeremiah Winter, and other members of the 104th Precinct of his symptoms of distress and begged them for medical assistance, including to be taken to the hospital immediately. Sgt. Ellington, Officer Friedrich, Officer Winter, and other members of the 104th Precinct refused the Claimant's pleas for any assistance and continued to harass him. A few hours later, when the Claimant was still in police custody, his conditioned worsened, as he could barely stand, felt like he was choking, and experienced numbness in some of his extremities.

Officer Friedrich and Officer Winter then transported the Claimant to Central Booking by holding him up on his feet and dragging him from their police vehicle to the holding areas in Central Booking. Once the Claimant was placed in a holding cell in Central Booking, he felt as if he were going to die, as he was lying on the floor and vomiting. Upon information and belief, other arrestees in the same holding cell were yelling to the police that the Claimant appeared to be at risk of dying and needed medical attention immediately, but the police refused to give the Claimant any help. He then lost consciousness, passing out on the floor of his cell. He awoke at Queens General Hospital where the doctors determined that he had suffered a stroke in police custody. The stroke occurred as a consequence of the false arrest and the subsequent overwhelming, outrageous, and cruel conduct of the police and the Department of Correction ("DOC"). To make matters worse, Sgt. Ellington came to the Claimant's apartment within days after the Claimant was released from the hospital. He continued to terrorize the Claimant by banging on his door and threatening to arrest him again for no legitimate reason. The Claimant, stricken with fear, was forced to hide in his apartment until Sgt. Ellington went away. As a result of his stroke and the other mental and emotional torture he endured at the hands of the police and the DOC, the Claimant's persisting injuries include, but are not limited to: impaired speech and vision, diminished motor skills, poor equilibrium, psychological and emotional distress, and an inability to work at all.

2

4.      **The items of damage or injuries claimed are:**

The Claimant is seeking monetary damages for all personal injuries referenced above with conscious pain and suffering, medical and related expenses, loss of earnings, and loss of enjoyment of life. The Claimant is also seeking punitive damages for the egregious conduct of the police during this incident.

**Total Amount Claimed is Thirty Million and 00/100-----($30,000,000.00) Dollars**

Dated: May 1, 2009

Respectfully yours,

Gerardo Mayol
Claimant

Joseph Tacopina, Esq.
Attorney for the Claimant
Tacopina, Seigel & Turano, P.C.
275 Madison Avenue, 35th Floor
New York, New York 10016
(212) 227-8877

See Notice of Claim Verification on next page.

3

## NOTICE OF CLAIM VERIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK

I, Gerardo Mayol, am the Claimant in the above-entitled action.  I have read the foregoing notice of claim, dated May 1, 2009, and know the contents thereof to be true to my own knowledge except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Gerardo Mayol
Claimant


Sworn to before me this

1st day of May 2009


Notary Public

BRIAN KING
Notary Public - State of New York
NO. 02KI6185238
Qualified in New York County
My Commission Expires 4/14/2013

4